**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **RICARDO BLACK,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br>     v. ) <br> ) <br> **MICHAEL J. ASTRUE,** ) <br> **Commissioner of Social Security,** ) <br> ) <br>     **Defendant.** ) <br> ) | **CIVIL NO. 3:09CV599** |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Ricardo Black, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for Social Security Disability ("DIB") payments. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 5) be DENIED; that Defendant's motion for summary judgment (docket no. 9) be GRANTED; and that the final decision of the Commissioner be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on March 30, 2007, claiming disability due to arthritis in his spine, emphysema, a rotated disc in his neck, nerve damage in his right hand, and depression, with an alleged onset date of August 10, 2006. (R. at 79-83, 95.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 48-52; 55-57.) On December 15, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 21-45.) On February 25, 2009, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience, and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 8-20.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were

applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 10.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of cervical disc disease status post fusion; lumbar spine degenerative disc disease; right carpal tunnel syndrome; chronic obstructive pulmonary disease; a major depression; a panic disorder; and polysubstance dependence in partial remission, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 10-13.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that he would be limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; he would have limited ability to use his right upper extremity for reaching, handling, and feeling; he would have to avoid concentrated exposure to extreme heat and cold, fumes, odors, and hazards; and he would be limited to simple, unskilled work, entailing only limited contact with the general public. (R. at 13-18.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a residential counselor because of the level of exertion required in the position. (R. at 22-23.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 19.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 19-20.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that the ALJ did not identify any occupation that Plaintiff could perform which takes into account all of the restrictions on his capacity for "light" (light) work. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 2-4.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 19-24.)

**A. The ALJ's finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform is supported by substantial evidence.**

Plaintiff argues that even though the Medical Vocational Guidelines ("Grids") presume the existence of jobs in the national economy, the ALJ was not able to base his decision on the Grids because Plaintiff had other factors affecting his RFC which did not satisfy the criteria for application of those rules. (Pl.'s Mem. at 3-4.) Plaintiff further asserts that the ALJ failed to identify any occupations that took into account all of the restrictions on Plaintiff's RFC for light work. (Pl.'s Mem. at 4.) Defendant argues that because the ALJ concluded that Plaintiff's additional restrictions on his capacity for light work would have little or no effect on the occupational basis for unskilled light work, the ALJ was permitted to rely on the Grids in concluding that Plaintiff was able to be employed, and therefore not disabled. (Def.'s Mem. at 19-23.)

Once an ALJ determines a claimant's RFC, he may use the Grids to determine the claimant's level of disability and potential for employment. Walker v. Bowen, 889 F.2d 47, 50

7

(4th Cir. 1989). The Grids catagorize jobs by their physical-exertion requirements,[6] namely, sedentary,[7] light,[8] medium, heavy, and very heavy. See SSR 83-10. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels (Rule 204.00). SSR 83-10; 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled."

Utilization of the Grids is predicated on the claimant suffering from exertional limitations, and the Grids are not applicable if the claimant suffers solely from nonexertional impairments. 20 C.F.R. § 404.1569a; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."). The reason for this rule is that nonexertional limitations may limit a claimant's ability to perform a full range of unskilled occupations at a given exertional level. Thus, where a claimant suffers only exertional

---

[6] A claimant's exertional limitations determines the proper exertional level for the claimant's situation. See SSR 83-10. An exertional limitation is an impairment-caused limitation which affects one's capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying pushing, and pulling. SSR 83-10.

[7] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[8] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

8

limitations, the ALJ must consult the Grids to determine eligibility for benefits. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). At the same time, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ must consult the Grids first to determine whether a rule directs a finding of disabled based on the strength requirement alone. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(2). If the claimant is found to be disabled on the strength requirement alone (i.e., a claimant is limited to light work and meets the other categories in rule 202.01), then there is no need to examine the effects of the nonexertional limitations. However, if a rule directs a finding of "not disabled" based on the strength requirement (i.e., the claimant is limited to light work and meets one of the categories in rule 202.10), then the ALJ cannot utilize the Grids; instead, a VE must be utilized to take into account the effects of the claimant's nonexertional and exertional limitations and the claimant's RFC to determine whether there are jobs existing in significant numbers in the national economy that the claimant can perform. Walker, 889 F.2d 49-50.

It is important to note, however, that "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." Walker, 889 F.2d at 49 (citing Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983)). The ALJ must inquire whether the nonexertional condition affects the claimant's RFC to perform work of which the claimant is exertionally capable. Id.

Here, the ALJ found that although Plaintiff retained the RFC for light work, he had the additional restrictions of: (1) occasional climbing, balancing, stooping, kneeling, crouching, and crawling; (2) the limited ability to use his right upper extremity for reaching, handling, and

9

feeling; (3) avoiding concentrated exposure to extreme heat or cold, fumes, odors, or hazards; and (4) simple, unskilled work entailing only limited contact with the general public. (R. at 13-18.) However, relying on SSR 83-14 and SSR 85-15, the ALJ found that these additional restrictions had only a slight effect on the light occupational base. (R. at 19.) Plaintiff does not argue that the ALJ incorrectly concluded that these limitations had only a slight effect on his occupational base; instead, he asserts that the ALJ failed to identify an occupation which takes into account all of the limitations. (Pl.'s Mem. at 4.)

With regard to Plaintiff's limitation of occasional climbing, balancing, stooping, kneeling, crouching, and crawling, the ALJ properly found that these postural restrictions would not significantly limit the ability to perform light work. (R. at 19.) SSR 83-14 states that to perform substantially all of the exertional requirements of most light jobs, a claimant would not need to crouch, and would need to stoop only occasionally. SSR 83-14 at 2, 4. Further, if a person can stoop and crouch occasionally, the light occupational base is "virtually intact." SSR 85-15 at 7. Also, the nonexertional limitations on the ability to kneel or crawl has very little or no effect on the unskilled, light occupational base. SSR 83-14 at 5, SSR 85-15 at 7. SSR 85-15 states that if a person has some limitation in climbing and balancing, it would not ordinarily have a significant impact on the occupational base; however, certain occupations, such as a construction painter, may be ruled out. SSR 85-15 at 6. Because Plaintiff was capable of "occasional" climbing, balancing, stooping, kneeling, crouching, and crawling, the light occupational base was not significantly impacted. Therefore, Plaintiff's limitations in these areas did not rise to the level of "impairments" so as to preclude reliance on the Grids. See 889 F.2d at 49.

10

With regard to Plaintiff's limited ability to use his right upper extremity for reaching, handling, and feeling, the ALJ properly found that some manipulative limitations would be permitted in the light occupational base, as long as such limitations allowed Plaintiff to grasp, hold, turn, raise, and lower objects. (R. at 19.) SSR 83-14 states that many unskilled light jobs do not entail fine use of the fingers; rather, they require gross use of the hands to grasp, hold, and turn objects. SSR 83-14 at 4. SSR 85-15 states that reaching and handling are required in almost all jobs, but <u>significant</u> limitations on these abilities may eliminate a large number of occupations a person could otherwise perform. SSR 85-15 at 7. The ALJ found that Plaintiff did not have any significant limitations in these abilities. (R. at 13-19.) The ALJ also found that Plaintiff was able to move his fingers, push buttons on the phone, pick up change, write, and open a jar, bottle, or soda can. (R. at 14.) Therefore, Plaintiff's limited manipulative abilities did not rise to the level of a disabling impairment. Therefore, because such limitations did not constitute impairments, the ALJ was permitted to rely on the Grids.

With regard to Plaintiff's need to avoid concentrated exposure to extreme heat or cold, fumes, odors, or hazards, the ALJ properly found that these environmental restrictions would not be significant. (R. at 19.) SSR 83-14 states that environmental restrictions would not significantly affect the potential unskilled, light occupational base. SSR 83-14 at 5. SSR 83-14 also states that the inability to ascend or descend scaffolding, poles, or ropes has very little or no effect on the unskilled, light occupational base. <u>Id</u>. at 5. SSR 85-15 states that a person who is unable to be on unprotected elevations, or near dangerous moving machinery, is someone who's environmental restrictions do not have a significant effect on work that exists at all exertional levels. SSR 85-15 at 8. Further, "where a person has a medical restriction to avoid excessive

11

amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." Id. Therefore, Plaintiff's environmental restrictions did not rise to the level of impairments, and the ALJ was permitted to rely on the Grids.

With regard to Plaintiff's limitation to simple, unskilled work entailing only limited contact with the general public, the ALJ properly found that Plaintiff had no limitations on his ability to understand, remember, and carry out simple job instructions; nor did a limited contact with the public constitute a significant loss of ability to respond appropriately to usual work situations. (R. at 19.) SSR 85-15 states that unskilled work includes the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. SSR 85-15 at 4. SSR 85-15 also states that a substantial loss of the ability to meet any of these activities would severely limit the potential occupational base. Id. Furthermore, unskilled jobs ordinarily involve dealing primarily with objects, rather than with data or people. Id. The ALJ did not find that Plaintiff suffered from substantial limitations in any of these activities. Also, the mere definition of unskilled work addresses Plaintiff's limitation of only limited contact with the general public. SSR 85-15 at 4. Therefore, the ALJ was permitted to rely on the Grids, as Plaintiff's limitations did not rise to the level of impairment.

Accordingly, it is the Court's recommendation that the ALJ's decision be affirmed. The ALJ properly analyzed Plaintiff's work capabilities and provided substantial evidence to support his findings. SSR 83-14 states that where it is clear that the additional limitations have very little effect on the exertional occupational base, as is the case here, the conclusion directed by the

Grids would not be affected. SSR 83-14 at 6. The ALJ was therefore permitted to rely on the Grids, which directed a finding of "not disabled."

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 5) be DENIED; that Defendant's motion for summary judgment (docket no. 9) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Richard L. Williams and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                /s/
                               DENNIS W. DOHNAL
                               UNITED STATES MAGISTRATE JUDGE

Date: April 26, 2010
Richmond, Virginia